UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11 C 4071 |
| v. | ) | |
| | ) | Chief Judge Rubén Castillo |
| CARDINAL GROWTH, L.P., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The United States, on behalf of its agency the Small Business Administration ("the SBA" or "the Receiver"), brought this action against Cardinal Growth, L.P. ("Cardinal") for violations of the Small Business Investment Act of 1958 ("the Act"), 15 U.S.C. § 661 *et seq*. (R. 1, Pl.'s Compl. ¶¶ 8, 9.) Pedersen & Houpt, P.C. ("P&H"), an Illinois law firm, served as Cardinal's principal transactional counsel. (R. 84, Pl.'s Resp. at 1.) Presently before the Court is P&H's petition for costs incurred in connection with a document production request made by the SBA. (R. 80, Pet. for Costs at 1.) For the reasons stated below, the Court denies the petition for costs.

## BACKGROUND

Cardinal is a Delaware limited partnership with its principal office in Chicago, Illinois. (R. 1, Pl.'s Compl. ¶ 3.) On July 7, 2000, the SBA licensed Cardinal under the Act to operate as a Small Business Investment Company ("SBIC"). (*Id.* ¶ 5.) The Act authorizes the SBA to promulgate regulations governing SBICs. (*Id.* ¶ 6.) The Act also authorizes the SBA to provide financing to licensed SBICs. (*Id.* ¶ 8.) Pursuant to the Act, the SBA provided financing to Cardinal through the purchase of securities in the amount of roughly $51 million. (*Id.* ¶ 8(a).) As of June 2011, Cardinal had failed to repay approximately $21 million of those funds. (*Id.*)

On June 15, 2011, the SBA filed a complaint against Cardinal seeking a receivership and other injunctive relief. (R. 1, Pl.'s Compl.) In its complaint, the SBA asserted that Cardinal's debt constituted a "condition of Capital Impairment" in excess of that allowed by SBA regulations. (*Id.* ¶¶ 15, 19.) On June 20, 2011, by agreement of the parties, the Court entered a Consent Order of Receivership ("Order") appointing the SBA as Receiver of Cardinal. (R. 6, Order ¶ 1.) The Order charged the SBA with "marshaling and liquidating all of Cardinal's assets," "satisfying the claims of creditors," and "pursu[ing] and preserv[ing] all of [Cardinal's] claims." (*Id.* ¶¶ 1-2.) To accomplish those goals, the Order grants the Receiver "immediate possession of all assets, bank accounts or other financial accounts, books and records and all other documents or instruments relating to Cardinal," and directs, in pertinent part, that Cardinal's past and present attorneys turn over all such documents in their possession. (*Id.* ¶ 3.) The Order also directs Cardinal's past and present attorneys to "produce any documents as required by the Receiver[.]" (*Id.* ¶ 6.)

From 2000 to 2011, P&H served as Cardinal's transactional counsel. (R. 84, Pl.'s Resp. at 1.) During that period, P&H collected more than $2 million in fees from Cardinal, drafted and prepared hundreds of transactional documents, and participated in the design of numerous complex transactions. (*Id.* at 2.) Several of those transactions resulted in Cardinal incurring substantial losses. (*Id.*) The SBA, as Receiver, has expressed a "significant interest" in the details surrounding those and similar transactions. (*Id.*) In the exercise of its duties, the SBA has "undertaken a detailed forensic investigation" that in part has required the SBA to "examine . . . the correspondence, including e-mails, between Cardinal's principals and various other persons, including Cardinal's counsel." (*Id.*) Accordingly, on October 21, 2011, the SBA

2

submitted a document production request to P&H pursuant to the Court's Order. (*Id.* at 3.) Specifically, the SBA requested that:

> [P&H] turn over to the Receiver all books, records, documents, accounts and all other instruments and papers of and relating to Cardinal, including (without limitation) all files, work papers, correspondence, letters, e-mails, pleadings, notes, memoranda, drafts, bills, invoices, and any other documents or recordings of any kind, in paper or electronic format, relating to Cardinal.

(*Id.*, Ex. A) (internal quotation marks omitted).

In responding to the request, P&H retained an outside vendor, Project Leadership Associates ("PLA"), to perform e-mail database searches and segregate responsive data. (R. 80, Pet. for Costs at 1.) P&H subsequently produced thousands of e-mails to the SBA. (R. 84, Pl.'s Resp. at 5.) P&H now claims that it incurred $44,256.70 in out-of-pocket costs as a result of its efforts, and seeks reimbursement of these costs under Rule 45 of the Federal Rules of Civil Procedure. (R. 80, Pet. for Costs at 3-4.) The SBA objects to this request, arguing that P&H is not entitled to reimbursement of its costs incurred in connection with the document request. (R. 84, Pl.'s Resp. at 6-9.)

## LEGAL STANDARD

Pursuant to Rule 45, a subpoena may command "production of documents, electronically stored information, or tangible things[.]" Fed. R. Civ. P. 45(c)(2)(A). The issuing party "must take reasonable steps to avoid imposing undue burden or expense" on the party subject to the subpoena. Fed. R. Civ. P. 45(d)(1). When a third-party is ordered to produce documents pursuant to a subpoena, "the presumption is that the responding party must bear the expense of complying with discovery requests," including requests for electronic data. *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 928 (N.D. Ill. 2010) (citation omitted). However, "cost-shifting should occur when an order requiring compliance subjects a non-party to 'significant expense.'" *Id.*

3

(citation omitted); *see also* Fed. R. Civ. P. 45(d)(2)(B)(ii) (providing that a court may compel production from a third party but "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance"). Ultimately, the decision whether to award costs is a matter of the Court's discretion. *See Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir. 1996).

## ANALYSIS

P&H argues that it is entitled to reimbursement of its production costs under Rule 45. (R. 80, Pet. for Costs at 3.) As a factual matter, however, the SBA's document request was not made pursuant to Rule 45. Rather, the SBA made the request pursuant to this Court's Order, which, by its terms, is binding on P&H as a former counsel of Cardinal. (*See* R. 6, Order ¶ 3.) Thus, Rule 45 does not control.

Even if Rule 45 did control, P&H would not be entitled to reimbursement under that Rule. When a non-party is ordered to produce documents pursuant to a Rule 45 subpoena, "the presumption is that the responding party must bear the expense of complying with discovery requests." *DeGeer*, 755 F. Supp. 2d at 928. Although a requesting party must avoid imposing "undue burden or expense" on the responding party, Fed. R. Civ. P. 45(d)(1), "a non-party can be required to bear some or all of its expenses where the equities of a particular case demand it," *In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992). This includes situations where a non-party has derived substantial income from a party. *See id.* at 383-84. Courts generally consider three factors when deciding whether to shift the cost of production from a non-party to the requesting party: "(1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear its costs than the requesting party; and (3) whether the litigation is of public importance." *DeGeer*, 755 F. Supp. 2d at 928.

4

Applying those factors here, the Court concludes that P&H is not entitled to reimbursement of its costs. First, P&H is not a typical disinterested non-party. P&H's position is analogous to that of the non-party public accountant in *In re Honeywell International Securities Litigation*, 230 F.R.D. 293, 298 (S.D.N.Y. 2003). In that case, shareholders of a corporation filed a lawsuit against the corporation alleging violation of federal securities laws. *Id.* at 296. In connection with the lawsuit, the shareholders moved under Rule 45 to compel production of certain documents from a non-party public accountant, PriceWaterhouseCoopers ("PWC"), the corporation's financial auditor. *Id.* In denying PWC's request for production costs, the court concluded that as the corporation's accountant, "PWC is not a classic disinterested non-party." *Id.* at 303; *see also Exxon*, 142 F.R.D. at 384 (third-party trade association which received approximately 30 percent of its gross receipts totaling $58 million from the defendants was not "the pure non-party witness identified in Rule 45"). Similarly, in this case, P&H served as Cardinal's counsel for over a decade. (R. 84, Pl.'s Resp. at 1.) During that period, P&H derived substantial income from Cardinal, drafted and prepared hundreds of transactional documents, and participated in the design of numerous complex transactions. (*Id.* at 2.) Thus, P&H "is not a classic disinterested non-party." *See In re Honeywell*, 230 F.R.D. at 303.

Second, the Court concludes that P&H can more readily bear the costs that were incurred than the Receiver. *See DeGeer*, 755 F. Supp. 2d at 928. P&H claims that it incurred $44,256.70 in out-of-pocket costs as a result of its efforts to respond to the SBA's document request. (R. 80, Pet. for Costs at 3.) During its representation of Cardinal, P&H collected $2 million in fees.[1] (R.

---

[1] In addition to the $2 million collected from Cardinal, the record reflects that P&H also collected approximately $700,000 from a separate corporate entity, Cardinal Growth Corp., which was formed solely to manage Cardinal. (*See* R. 84, Pl.'s Resp. at 8.)

5

84, Pl.'s Resp. at 8.) Relative to the substantial income that P&H collected from Cardinal, the expenses incurred by P&H in complying with the Court's order do not constitute a "significant expense." *See DeGeer*, 755 F. Supp. 2d at 928. If the Court were to award costs to P&H, the federal government (and ultimately the taxpayers) would be forced to foot the bill. The Court also considers that P&H's selected method of storing e-mails is apparently what drove the need for an outside vendor.[2] (*See* R. 84, Pl.'s Resp. at 7.) In that sense, the costs are more appropriately considered as overhead expenses incurred by P&H to comply with this Court's Order. *See Blank v. Talley Indus., Inc.*, 54 F.R.D. 627, 627 (S.D.N.Y. 1972) (non-party brokerage firm was not entitled to reimbursement of production costs that were "in the nature of overhead expenses necessary for responding to legitimate court orders"). The fair conclusion is that P&H, rather than the Receiver, should bear the costs that were incurred.

Third, this litigation is "of public importance." *See DeGeer*, 755 F. Supp. 2d at 928. The SBA is a public agency that regulates the operations of publically financed SBICs. (R. 1, Compl. ¶ 6.) Pursuant to its regulatory powers, the SBA provided Cardinal with millions of dollars in public funds. (*Id.* ¶ 8(a).) This lawsuit was brought to address Cardinal's failure to repay those funds and to operate in accordance with SBA regulations. (*Id.* ¶ 8.) As Receiver, the SBA has a duty to responsibly liquidate Cardinal's assets, pay its creditors, and preserve its claims in furtherance of the public interest. (*See* R. 6, Order ¶ 1.) To properly execute those duties, the SBA needed documents that were in the possession of P&H. Under these circumstances, the SBA should not have to bear the cost of production.

---

[2] The SBA makes an assertion, which is not contradicted by P&H, that P&H's system of storing e-mails was the "the electronic equivalent of an enormous stack of unfiled and unsorted papers." (R. 84, Pl.'s Resp. at 7.)

6

As a final matter, the Court also considers that P&H is subject to ethical and professional obligations under the Illinois Rules of Professional Conduct. (R. 84, Pl.'s Resp. at 1, 8.) One such obligation is that, upon termination of representation of a client, an attorney must deliver to the client "all papers and property to which the client is entitled." Ill. Rules of Prof. Conduct 1.16(d). Interpreting the identically worded Colorado Rule of Professional Conduct, a district judge in Colorado held that the delivery of a client's files or other property should be done "without additional cost to the client." *Apa v. Qwest Corp.*, 402 F. Supp. 2d 1247, 1250 (D. Colo. 2005) (denying attorney's request for reimbursement of costs incurred in connection with producing files of former client). The Court finds that court's reasoning instructive.

In this case, the Court appointed the SBA as Receiver of Cardinal—P&H's former client. (R. 6, Order ¶ 1; R. 84, Pl.'s Resp. at 1.) For all practical purposes, the SBA "stepped into the shoes" of Cardinal. (*See* R. 6, Order ¶ 2 ("The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and general and limited partners of Cardinal under applicable state and federal law[.]").) P&H has a duty to fulfill its professional obligations to clients like Cardinal both during the course of representation and at the termination of representation. The obligation owed by P&H here, both under its professional obligations and this Court's Order, was to turn over all documents in its possession that the SBA needed to carry out its duties as Receiver, including e-mails and other electronically stored information. Based on these considerations, the Court will not award costs to P&H.

## CONCLUSION

For the foregoing reasons, P&H's petition for costs (R. 80) is DENIED.

ENTERED: _____
Chief Judge Rubén Castillo
United States District Court

Dated: February 23, 2015